UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DUNKIN' DONUTS FRANCHISING LLC,
    a Delaware Limited Liability Company,

DD IP HOLDER LLC,
    a Delaware Limited Liability Company,

        Plaintiffs,

      v.

HOCKESSIN DONUTS LLC,
    a Delaware Limited Liability Company,

FOX RUN DONUTS, LLC,
    a Delaware Limited Liability Company,

MILLCREEK DONUTS, L.L.C.,
    a Delaware Limited Liability Company,

TROLLEY SQUARE DONUTS, INC.,
    a Delaware Corporation,

LONGWOOD DONUTS, INC.,
    a Pennsylvania Corporation,

NEW CASTLE DONUTS, L.L.C.,
    a Delaware Limited Liability Company,

CONCORD DONUTS, INC.,
    a Pennsylvania Corporation,

ELSMERE DONUTS, L.L.C.,
    a Delaware Limited Liability Company,

BEAR DONUTS LLC,
    a Massachusetts Limited Liability Company,

THOMAS SHEEHAN,
    a Delaware citizen,

KENNETH LARSEN,
    a Delaware citizen,

        Defendants.

Case No. _____

## COMPLAINT

This is an action for dilution by tarnishment of famous federal trademarks, trademark infringement, trade dress infringement, unfair competition, breach of contract, and declaratory

-2-

judgment.  Plaintiff Dunkin' Donuts Franchising LLC ("Dunkin' Franchising") licensed Defendants Hockessin Donuts LLC, Fox Run Donuts, LLC, Millcreek Donuts, L.L.C., Trolley Square Donuts, Inc., Longwood Donuts, Inc., New Castle Donuts, L.L.C., Concord Donuts, Inc., Elsmere Donuts, L.L.C., and Bear Donuts LLC (collectively, the "Franchisee Defendants") to use the famous and federally registered Dunkin' trademarks and service marks (the "Dunkin' Marks") and the Dunkin' System at nine franchised restaurants located in Delaware and Pennsylvania. Defendants Thomas Sheehan and Kenneth Larsen were the owners of the Franchisee Defendants and guaranteed their obligations under the Franchise Agreements.

For the protection of the Dunkin' Marks and brand, the Franchise Agreements contained various provisions related to the proper operation of the restaurants, including the express obligation to "obey all laws."  Dunkin' investigated and determined that Defendants were committing pervasive violations of federal law, including 8 U.S.C. § 1324a(a)–(b), by failing to verify whether employees at the restaurants were authorized to work in the United States and failing to maintain required work authorization records.  These and other documented violations constitute a breach of multiple provisions of the Franchise Agreements and also have caused and will cause immediate harm to the federally-protected Dunkin' Marks. As a consequence, Dunkin' Franchising has given notice that the Franchise Agreements are or will be terminated and has requested that Defendants deidentify the restaurants and comply with various other post-termination provisions in the Franchise Agreements.  However, Defendants have failed to give the requested assurances.  Accordingly, as set out below, Plaintiffs now seek damages, injunctive, and declaratory relief.

**The Parties**

1. Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business located in Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate Dunkin' restaurants throughout the United States. Dunkin' franchisees are licensed to use the Dunkin' trade names, service marks, and trademarks and to operate under the Dunkin' System, which involves the production, merchandising, and sale of doughnuts, coffee, and related products utilizing specially designed buildings with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, standards, specifications, proprietary marks, and identification.

2. Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business located in Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin'" and related marks. (Unless stated otherwise, Plaintiffs Dunkin' Franchising and DD IP Holder LLC are referred to collectively as "Dunkin'".)

3. Defendant Hockessin Donuts LLC is a Delaware limited liability company with its principal place of business in Hockessin, Delaware. It operates a Dunkin' restaurant located at 7454 Lancaster Pike, Hockessin, Delaware pursuant to a Franchise Agreement dated March 8, 2018. A true copy of the Franchise Agreement for this restaurant is attached to this Complaint as Exhibit 1.

4. Defendant Fox Run Donuts, LLC is a Delaware limited liability company with its principal place of business in Bear, Delaware. It operates a Dunkin' restaurant located at 1923 Pulaski Highway, Bear, Delaware pursuant to a Franchise Agreement dated March 15, 2015. The terms and conditions contained in this Franchise Agreement are substantially similar to those in

Exhibit 1.

5. Defendant Millcreek Donuts, L.L.C. is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. It operates a Dunkin' restaurant located at 1327 McKennans Church Road, Wilmington, Delaware pursuant to a Franchise Agreement dated January 23, 2013. The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 1.

6. Defendant Trolley Square Donuts, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. It operates a Dunkin' restaurant located at 1901 Pennsylvania Avenue, Wilmington, Delaware pursuant to a Franchise Agreement dated January 23, 2013. The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 1.

7. Defendant Longwood Donuts, Inc. is a Pennsylvania corporation with its principal place of business in Kennett Square, Pennsylvania. It operates a Dunkin' restaurant located at 934 E. Baltimore Pike, Kennett Square, Pennsylvania pursuant to a Franchise Agreement dated January 23, 2013. The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 1.

8. Defendant New Castle Donuts, L.L.C. is a Delaware limited liability company with its principal place of business in Newport, Delaware. It operates a Dunkin' restaurant located at 222 West Market Street, Newport, Delaware pursuant to a Franchise Agreement dated October 30, 2007. A true copy of the Franchise Agreement for this restaurant is attached to this Complaint as Exhibit 2.

9. Defendant Concord Donuts, Inc. is a Pennsylvania corporation with its principal place of business in Concordville, Pennsylvania. It operates a Dunkin' restaurant located at 1110

Baltimore Pike, Concordville, Pennsylvania pursuant to a Franchise Agreement dated January 16, 2003.  The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 2. Defendants Longwood Donuts, Inc. and Concord Donuts, Inc. are sometimes referred to as the "Pennsylvania Defendants."

10. Defendant Elsmere Donuts, L.L.C. is a Delaware limited liability company with its principal place of business in Elsmere, Delaware.  It operates a Dunkin' restaurant located at 1012 Wilmington Avenue, Elsmere, Delaware pursuant to a Franchise Agreement dated May 1, 2001.  The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 2.

11. Defendant Bear Donuts LLC is a Delaware limited liability company with its principal place of business in Bear, Delaware.  It operates a Dunkin' restaurant located at 1200 Pulaski Highway, Bear, Delaware pursuant to a Franchise Agreement dated July 5, 2000.  The terms and conditions contained in this Franchise Agreement are substantially similar to those in Exhibit 2.

12. Defendant Thomas Sheehan is a natural person and, on information and belief, a citizen of the State of Delaware.  He personally guaranteed the obligations of each Franchisee Defendant pursuant to personal guarantees (the "Guarantees") executed in connection with each of the Franchise Agreements.

13. Defendant Kenneth Larsen is a natural person and, on information and belief, a citizen of the State of Delaware.  He personally guaranteed the obligations of Franchisee Defendants New Castle Donuts, L.L.C., Elsmere Donuts, L.L.C., and Bear Donuts LLC pursuant to the Guarantees executed in connection with their respective Franchise Agreements.

**Jurisdiction**

14. This Court has jurisdiction pursuant to sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) and 1121, and 28 U.S.C. §§ 1331, 1338, and 1367. The underlying facts substantiating the Court's jurisdiction are set out in greater detail below.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims herein occurred in the District. The underlying facts substantiating the assertion of venue in this District are set out in greater detail below.

16. This Court has *in personam* jurisdiction over Defendants because they each conduct business in this District and a substantial part of the events giving rise to this dispute occurred in this District. The underlying facts substantiating the Court's personal jurisdiction are set out in greater detail below.

**Background Facts**

**The Dunkin' System and the Dunkin' Marks**

17. Dunkin' Franchising is the franchisor of the Dunkin' System for franchised restaurants.

18. DD IP Holder LLC is the owner of the Dunkin' Marks. Dunkin' Franchising has the exclusive license to use and license others to use the Dunkin' Marks and, along with its predecessors, has used them continuously since approximately 1960 to identify its restaurants and the doughnuts, pastries, coffee, and other products associated with those restaurants.

19. DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' and related marks ("the Dunkin' Marks"). Among those are Registration Nos. 4,290,078; 748,901; 1,148,165; 4,600,316; and 1,159,354. Each of these registrations is in full force and effect, and is

incontestable, pursuant to 15 U.S.C. § 1065.

20. The Dunkin' Marks and trade name have been widely and continuously used in interstate commerce for decades in connection with Dunkin' restaurants and the doughnuts, pastries, coffee, and other products associated with these restaurants.

21. The Dunkin' Marks and trade name are inherently distinctive. Additionally, they have been extensively used, promoted, and advertised, and thus are distinctive and famous indicators of Dunkin' and its properly licensed franchisees as sources of high quality goods and services, generating valuable goodwill for Dunkin'.

22. The Dunkin' Marks have been widely advertised and promoted by Dunkin' over the years. Between 1971 and 2016, Dunkin' and its franchisees spent over $4 billion on advertising and promoting the Dunkin' Marks. Over $300 million was spent in 2018 alone on advertising and promotion of the Dunkin' Marks.

23. Dunkin' franchisees currently operate approximately 9,500 Dunkin' restaurants in the United States and over 3,000 restaurants internationally. Dunkin' restaurants feature the distinctive Dunkin' trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than sixty years since the Dunkin' Franchise System began, hundreds of millions of consumers have been served in Dunkin' restaurants.

24. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Marks, the public has come to know and recognize the Dunkin' Marks, and to associate them exclusively with products and services offered by Dunkin' franchisees. The Dunkin' Marks are famous. They are among the best and most widely known and recognized trademarks in the United States today, and are assets of inestimable value to Dunkin', representing and embodying Dunkin's considerable goodwill and favorable reputation.

25. The goodwill and reputation associated with the Dunkin' Marks are harmed or subject to being harmed when a franchisee operates a Dunkin' franchise contrary to the standards and requirements established by the franchise agreement, including the obligation to obey all laws in the operation of the business.

**Defendants' Obligations Under the Franchise Agreements**

26. Defendants were formerly licensed to use Dunkin's trade names, trademarks, and trade dress in accordance with the terms of the Franchise Agreements.

27. Under the terms of the Franchise Agreements, Defendants agreed that they would comply with all applicable laws, ordinances, rules, regulations, and orders of public authorities pertaining to the occupancy, operation, and maintenance of their restaurants. (Franchise Agreements, Exhibit 1[1] § 7.1; Exhibit 2 § 5.1.7.)

28. Defendants agreed to keep and maintain the business records of the franchise as required by law and in a form and manner as Dunkin' may mandate. (Exhibit 1 § 11.0; Exhibit 2 §§ 5.1.7.1, 5.2.)

29. Defendants agreed to make available and produce the franchise's books and records to Dunkin'. (Exhibit 1 § 11.2; Exhibit 2 §§ 5.2.4, 6.2.)

30. Defendants agreed not to perform any act or offense injurious or prejudicial to the goodwill associated with the Dunkin' Marks and System. (Exhibit 1 §§ 10.1, 14.0.3; Exhibit 2 § 9.0.2.)

31. Defendants also agreed not to use the business franchised by Dunkin' for any unauthorized purpose. (Exhibit 1 § 14.0.5; Exhibit 2 § 9.0.3.)

---

[1] As stated above, the Franchise Agreements under which the Franchisee Defendants operate contain substantially similar provisions to those in Exhibit 1 and 2. Accordingly, we cite to those Agreements only.

32. No cure period was available to Defendants under the Franchise Agreements if they defaulted under the section referenced in the previous two paragraphs or if they otherwise committed an act of fraud with respect to the performance of any obligation under the Agreement. (Exhibit 1 §§ 14.2, 14.0.4; Exhibit 2 § 9.1.4.)

33. Each Franchise Agreement contained a "cross-default" provision, which permitted termination if Dunkin' terminated any other franchise agreement with Defendants or any affiliated entity for the reasons set forth in paragraph 30-32 above. (Exhibit 1 § 14.0.6; Exhibit 2 § 9.0.4.)

### **Defendants' Violations of the Franchise Agreements**

34. Federal law prohibits the hiring or continued employment of individuals who are not authorized to work in the United States. 8 U.S.C. § 1324a(a). To ensure compliance with this requirement, the governing statute establishes an employment verification system. The statute requires the employer to complete and execute an I-9 employment verification form for each employee, attesting, under penalty of perjury, that the employer has verified the employee's identity and employment eligibility by examining one or a combination of specified documents. *Id.* § 1324a(b)(1)(A). The employer must retain its I-9 Forms and make them available for inspection. *Id.* § 1324a(b)(3). In the Dunkin' System, franchisees are required to use the "E-Verify" system to verify the authorization to work of each employee in order to assure compliance with federal law requiring employment eligibility.

35. Dunkin' conducted a review from January 2017 through October 2018 of each of the Franchisee Defendants' employment and tax records dating back to January 2017.

36. Dunkin's review included employees' employment applications, I-9 employment eligibility verification forms, W-4 withholding allowance certificates, E-Verify records, and timecards, as well as the Franchisee Defendants' payroll registers, employee work schedules,

general ledgers, and federal tax returns.

37. Dunkin's review demonstrated pervasive noncompliance with the Federal law provisions identified above, which also resulted in violation of the "Obey All Laws" provision in sections 7.1 or 5.1.7 of the Franchise Agreements.

38. Dunkin's review found that there was no employment documentation or incomplete documentation for a substantial portion of the employee files provided by Defendants.

39. Dunkin' noted that this deficiency was present with respect to each of the Franchisees.

40. In addition, many of the I-9 and W-4 forms that Defendants provided were backdated, demonstrating that the employee's eligibility to work had not been documented by Defendants as required at the commencement of their employment.

41. For example, Defendants submitted to Dunkin' 2017 versions of I-9 forms with signature dates that were purported by Defendants to be as early as 2012.

42. Defendants also failed on many occasions to use E-Verify to determine the eligibility of prospective employees to work in the United States and, in many instances, only obtained E-Verify reports after they were notified of Dunkin's investigation, demonstrating that they had not complied with this requirement in the ordinary course of their business.

43. The foregoing facts demonstrate violations of 8 U.S.C. § 1324a(a)–(b). Accordingly, Defendants have violated the "Obey All Laws" provision in sections 7.1 or 5.1.7 of the Franchise Agreements, which required them to comply with all applicable laws, ordinances, rules, regulations and orders of public authorities pertaining to the occupancy, operation and maintenance of the restaurant.

44.     Defendants also have violated additional provisions of the Franchise Agreements. In particular, Defendants have permitted the use of the franchise business for an unauthorized purpose – the conduct of a hiring process not in accordance with federal law – in violation of sections 14.0.5 or 9.0.3 of the Franchise Agreements. Moreover, through their failure to obtain or maintain required employment documentation, Defendants failed to maintain complete and accurate business records, in violation of sections 11.0 or 5.1.7.1 and 5.2 of the Franchise Agreements. The provision of inaccurate or misleading information to Dunkin's investigators violated sections 14.0.4 and 14.2 or 9.1.4 of the Franchise Agreements. Also, Defendants' violations also constituted acts injurious or prejudicial to the goodwill associated with Dunkin's Proprietary Marks and System, in violation of sections 10.1 and 14.0.3 or 9.0.2 of the Franchise Agreements. These are material, noncurable breaches of the Franchise Agreements.

45.     Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements, on June 20, 2019, Dunkin' served Defendants with a Notice of Default and Termination. A true copy of the Notice of Default and Termination is attached as Exhibit 3 to this Complaint. The Notice terminated the Pennsylvania Franchise Agreements effective immediately and the Delaware Franchise Agreements effective ninety (90) days following Defendants' receipt of the Notice, stated the grounds for termination, and requested that Defendants comply with their post-termination obligations as set forth in the Franchise Agreements.

46.     Despite Dunkin's request, Defendants have not confirmed their acceptance of the termination and are continuing to operate the franchised businesses using the Dunkin' Marks and System.

**COUNT I**
**(Breach of Contract—Failure to Obey Federal Employment Law as Required)**

47.     The allegations of paragraphs 1 through 46 are hereby incorporated by reference.

48. Defendants' failure to comply with the requirements of 8 U.S.C. § 1324a(a)–(b) constitutes a material breach of the obligations in sections 7.1 or 5.1.7 of the Franchise Agreements requiring Defendants to comply with all laws applicable to their restaurants.

49. Dunkin' has performed its obligations under the Franchise Agreements.

50. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined. Defendants' pervasive violations of federal employment law also constitute a noncurable breach of the Franchise Agreements, which entitled Dunkin' to terminate the Franchise Agreements.

## COUNT II
### (Breach of Contract—Additional Provisions)

51. The allegations of paragraphs 1 through 50 are hereby incorporated by reference.

52. Defendants have violated the Franchise Agreements by permitting the use of the franchise business for an unauthorized purpose, in violation of sections 14.0.5 or 9.0.3 of the Franchise Agreements.  Through their failure to obtain or maintain required employment documentation, Defendants have also failed to maintain complete and accurate business records, in violation of sections 11.0 or 5.1.7.1 and 5.2 of the Franchise Agreements.  The provision of inaccurate or misleading information to Dunkin's investigators violated sections 14.0.4 and 14.2 or 9.1.4 of the Franchise Agreements.  Defendants' violations also constituted acts "injurious or prejudicial to the goodwill associated with [Dunkin's] Proprietary Marks and System," in violation of sections 10.1 and 14.0.3 or 9.0.2 of the Franchise Agreements.  Defendants' breaches of the Franchise Agreements are material and noncurable.

53. Dunkin' has performed all of its obligations under the Franchise Agreements.

54. As a consequence of Defendants' breaches of the Franchise Agreements, Dunkin'

has incurred and will continue to incur monetary damages.

## COUNT III
### (Dilution by Tarnishment of Famous Marks)

55. The allegations of paragraphs 1 through 54 are hereby incorporated by reference.

56. The registered Dunkin' Marks, including the registered marks listed in paragraph 19, are famous within the meaning of 15 U.S.C. § 1125(c)(2)(A).

57. Defendants' improper and illegal activities, as detailed above, which have been committed in connection with restaurants operating under the Dunkin' Marks, are willfully intended to harm the reputation of the Dunkin' Marks, and are likely to cause, have caused, and will continue to cause irreparable harm to the reputation of the famous Dunkin' Marks. As such, Defendants' acts are likely to cause dilution by tarnishment, have tarnished, and are continuing to tarnish the Dunkin Marks in violation of 15 U.S.C. § 1125(c). Dunkin' also is continuing to incur monetary damage in an amount that has yet to be determined as a result of Defendants' willful acts.

## COUNT IV
### (Trademark Infringement – Pennsylvania Franchises)

58. The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59. The use in commerce of the Dunkin' Marks and trade names by the Pennsylvania Franchisee Defendants outside the scope of the Franchise Agreements and without Dunkin's and consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Pennsylvania Franchisee Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of Dunkin's trademarks and trade names infringes its exclusive rights in its trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law. These acts are applicable to the Defendant

Sheehan through the various guarantees he executed in connection with the Pennsylvania Franchise Agreements.

60. The acts of the Pennsylvania Franchisee Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61. As a result of the actions of the Pennsylvania Defendants, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
**(Unfair Competition – Pennsylvania Franchises)**

62. The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63. The use in commerce of Dunkin's trademarks and trade names by the Pennsylvania Franchisee Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's trademarks and trade names violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law. These acts are applicable to Defendant Sheehan through the various guarantees he executed in connection with the Pennsylvania Franchise Agreements.

64. The acts of the Pennsylvania Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

65. As a result of the actions of the Pennsylvania Defendants, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VI
**(Trade Dress Infringement – Pennsylvania Franchises)**

66. The allegations of paragraphs 1 through 65 are hereby incorporated by reference.

67. The Pennsylvania Franchisee Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the word "Dunkin'" appears in the same lettering style and in the same distinctive color scheme as Dunkin' uses for the doughnut shops operated by its licensees.

68. The use by the Pennsylvania Franchisee Defendants of trade dress that is identical to the Dunkin' trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Pennsylvania Franchisee Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the shops operated by Dunkin' licensees.  Such adoption of the Dunkin' trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.  These acts are applicable to Defendant Sheehan through the various guarantees he executed in connection with the Pennsylvania Franchise Agreements.

69. The acts of the Pennsylvania Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70. As a result of the actions of the Pennsylvania Defendants, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VII
**(Declaratory Judgment)**

71.   The allegations of paragraphs 1 through 70 are hereby incorporated by reference.

72.   Defendants have violated the Franchise Agreements by failing to obey all laws as required by sections 7.1 or 5.1.7 of the Franchise Agreements and by permitting the use of the franchised business for an unauthorized purpose, in violation of sections 14.0.5 or 9.0.3 of the Franchise Agreements.  The provision of inaccurate or misleading information to Dunkin's investigators violated sections 14.0.4 and 14.2 or 9.1.4 of the Franchise Agreements.  Defendants' violations also constituted acts "injurious or prejudicial to the goodwill associated with [Dunkin's] Proprietary Marks and System," in violation of sections 10.1 and 14.0.3 or 9.0.2 of the Franchise Agreements.  Pursuant to sections 14.2 or 9.1.4 of the Franchise Agreements and by operation of law, Defendants' breaches of the Franchise Agreements are material and noncurable.

73.   Dunkin' has performed all of its obligations under the Franchise Agreements.

74.   As a consequence of Defendants' breaches of the Franchise Agreements, Dunkin' was entitled to and did give notice that the Franchise Agreements were terminated in accordance with law.  Defendants have not agreed that the termination was proper.

75.   There is an actual and justiciable controversy regarding the termination, and Dunkin' is entitled to a declaratory judgment under 28 U.S.C. §§ 2201–02 that the termination was proper under the terms of the Franchise Agreements and in accordance with law.

## **Prayer for Relief**

WHEREFORE, Dunkin' requests that this Court:

A.   Enter judgment in favor of Dunkin' and against Defendants, jointly and severally, for the damages incurred by Dunkin' as a result of Defendants' failure to obey federal employment law as required, in an amount according to proof;

B. Enter judgment in favor of Dunkin' and against Defendants, jointly and severally, for the damages incurred as a result of Defendants' breaches of the Franchise Agreements, in an amount according to proof;

C. Enter a declaratory judgment that Dunkin' properly terminated the Franchise Agreements in accordance with their terms and applicable law;

D. Enter judgment in favor of Dunkin' and against Defendants, jointly and severally, for the damages Dunkin' has sustained and any profits Defendants have derived as a result of their trademark dilution by tarnishment, and order that such damages be assessed in a separate accounting procedure and trebled in accordance with section 35 of the Lanham Act, 15 U.S.C. § 1117;

E. Enter an order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from tarnishing the Dunkin' Marks;

F. Enjoin the Pennsylvania Defendants and all those acting in concert with them from infringing upon Plaintiffs' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Plaintiffs;

G. Enter an order requiring Defendants to file with the Court and serve on Dunkin', within thirty days after the service upon Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H. Award Dunkin' prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

I. Award Dunkin' its costs and attorneys' fees incurred in connection with this action, as provided in sections 14.4.4 or 9.3 of the Franchise Agreements, Section 35 of the Lanham Act,

15 U.S.C. § 1117, and pursuant to applicable law, including the costs incurred in conducting any and all necessary inspections and audits; and

  J.  Award Dunkin' such other relief as this Court may deem just and proper.

| | |
|---|---|
| Dated: June 24, 2019 | GELLERT SCALI BUSENKELL & BROWN, LLC |

               */s/ Margaret F. England*
               Margaret F. England (DE 4248)
               1201 N. Orange St., Suite 300
               Wilmington, DE 19801
               Telephone: (302) 416-3341
               Fax: (302) 425-5814
               mengland@gsbblaw.com

               GRAY, PLANT, MOOTY, MOOTY
                & BENNETT, P.A.

               Eric L. Yaffe (*pro hac vice* to be filed)
               Maisa Jean Frank (*pro hac vice* to be filed)
               The Watergate – Suite 700
               600 New Hampshire Ave. NW
               Washington, DC 20037
               Telephone: (202) 295-2200
               Fax: (202) 295-2250
               eric.yaffe@gpmlaw.com
               maisa.frank@gpmlaw.com

               *Attorneys for Plaintiffs*